IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-CR-0027-RJC-DSC

| | |
|---|---|
| USA | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| LUIS ANALBERTO PINEDA ANCHECTA | ) |
| | ) |

**THIS MATTER** is before the Court upon the defendants' Motion for a New Trial, (Doc. No. 35), and the government's Response in opposition, (Doc. No. 36). For the reasons stated below, the motion will be denied.

I. BACKGROUND

The defendant was convicted of kidnapping after a two-day jury trial. (Doc. No. 31: Verdict). He seeks a new trial under Federal Rule of Criminal Procedure 33(a) based on six claimed errors: (1) the government's use of false testimony, (2) the government's improper closing argument, (3) an interpreter's violation of his Confrontation Clause rights, (4) the Court's evidentiary errors, (5) the Court's erroneous jury instructions, and (6) the cumulative effect of any of these alleged errors depriving him of due process and a fair trial. (Doc. No. 35: Motion at 1). Under Rule 33, a new trial can be ordered if required in the interest of justice, but "a jury verdict is not to be overturned except in the rare circumstance where the evidence weighs heavily against it." United States v. Burfoot, 899 F.3d 326, 340 (4th Cir. 2018) (internal quotation marks omitted).

II.   DISCUSSION

   A.   False Testimony

The defendant argues that the government violated due process by failing to correct the false testimony of its main witness, Flor Mejia. (Doc. No. 35: Motion at 1). The defendant bears the burden of proving the witness testified falsely; mere inconsistencies do not establish the government's knowing use of false testimony. United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987).

The defendant alleges that "[o]n cross-examination [Flor Mejia] specifically denied texting the night of the kidnapping or texting that she would meet someone by her mailbox." (Doc. No. 35 Motion at 2). The defendant relies on Mejia's cellphone records provided in discovery to prove the government knew "she was actively texting with a number before telling one of the callers she would meet them at her mailbox before she exited her apartment and a waiting masked man jumped out from a bush." (Id.). Neither the witness's testimony nor the cellphone records establish the defendant's claim.

First, Mejia admitted on cross-examination that she was texting that evening using the cellphone application What's App. The transcript reads:

>    Q. And that evening you were actually sending messages back and forth almost every minute.
>    A. I didn't understand.
>    Q. On your cell phone with the phone number I just provided, you sent messages back and forth using What's App. Sorry, your answer?
>    A. Yes.
>    Q. And on May 21, 2019, you gave officers permission to take information from your phone.
>    A. Yeah.

2

> Q. And so throughout the evening of May 21, 2019, you sent many messages through What's App.
> A. Maybe, yes.

(Doc. No. 37: Tr. at 112). Accordingly, the defendant's claim that Mejia falsely denied texting that evening is without merit.

Second, the cellphone records to do not establish that Mejia had a plan to meet someone at the mailbox in contradiction to her testimony that she did not, or that the government knew if she did. A listing of approximately 128 What's App messages allegedly sent that evening from and to Mejia's cellphone, with English translation by an independent translator, is attached to the defendant's motion. (Doc. No. 35-2: Exhibit B). One outgoing message reads, "In the mailbox parking lots." (Id. at 3). However, the defendant has not shown that any of the messages evidence a plan to meet someone outside. Accordingly, the defendant has not carried his burden to show the falsity of Mejia's testimony that she was abducted when she went outside to get her purse from her car.

Therefore, a new trial is not required in the interest of justice based on the claim of the government using alleged false testimony.

B.  Closing Argument

The defendant claims that the government made improper prejudicial remarks without an evidentiary basis during closing argument, requiring a new trial. (Doc. No. 35 at 5). To prove such prosecutorial misconduct, the defendant must show that the remarks were improper and that they "prejudicially affected the defendant's substantial rights as to deprive the defendant of a fair trial." United

3

States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993). There are four factors to determine if the remarks are prejudicial:

> (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir. 1983).

First, the defendant argues the government improperly commented on the meaning of the defendant's tattoos, to which he objected. (Doc. No. 35: Motion at 6). The government asked the jury to recall a series of photographs from the defendant's alleged cellphone. (Doc. No. 38: Tr. at 244).[1] A forensic examiner determined the photographs (Government Trial Exhibits 17A-17J) were timestamped May 19, 2019. (Id. at 210-11). Thus, the government argued:

> As the government's evidence has shown, the defendant, even after they broke up, was obsessed with Flor Mejia.
> You may recall the photos from the defendant's phone. There's a tattoo on or about May 19, which is two days before this kidnapping occurred, a fresh tattoo on the defendant's arm. You see the two initials. You see F --
> MS. TAYLOR: Objection; not in evidence.
> THE COURT: Overruled.
> MR. SMITH: You see the photograph, there is an F and there's an L. It is the government's contention that the F is for Flor, the L is for Luis, the defendant. That is two days before he committed this kidnapping.

---

[1] For ease of reference, the Court will use page numbers in the original transcript, not those generated by the CM/ECF footer.

4

(Doc. No. 38: Tr. at 244-45). In context, the defendant objected to the reference to a "fresh tattoo," considering the photograph (Government Trial Exhibit 17E) was timestamped May 19, but not the tattoo itself. Now the defendant complains the government used unadmitted evidence to improperly comment on the meaning of a tattoo. (Doc. No. 35: Motion at 6). However, the government's remark about the initials, prefaced as its "contention," did not mislead the jury, but was a reasonable inference from the photograph admitted into evidence. Accordingly, this claim is without merit.

Second, the defendant contends there was no evidence to support the government's assertion in rebuttal argument that the defendant planned a "home invasion to terrorize Mejia" that turned into a kidnapping. (Doc. No. 35: Motion at 6). The government rightly responds that its comment, which did not include the words "home invasion" or "terrorize," was an answer to a question raised by defense counsel in her closing argument. (Doc. No. 36: Response at 8).

Mejia testified that when she walked outside her apartment to get her purse from her car, a man with a black face covering grabbed her, forcing her hands behind her back. (Doc. No. 37: Tr. at 77-82). She related that the defendant then stuffed a piece of clothing in her mouth to keep her from yelling, threw her into a car parked in front of the apartment, tied her hands with a rope, and told her, "Bitch, you're going to be kidnapped." (Id. at 82-86).

In criticizing the lack of photographs showing the exterior of Mejia's apartment at the time of the offense, defense counsel asked:

5

> We have no photos of the actual scene where a masked man apparently popped out of a bush that he hangs out in just in case someone leaves the house, because it is her testimony she wasn't even going to leave the house so why would anybody just happen to be there?

(Doc. No. 38: Tr. at 254). In response, the government began its rebuttal argument with:

> The defendant had a plan that he was going to execute. The problem is that he failed to expect the unexpected, because that night when he went to his ex-girlfriend's apartment where he used to live, he planned, along with his unknown friend, to go inside that apartment and do whatever he wanted to do. But he didn't expect the unexpected. He didn't expect Flor Mejia to walk outside before they could break in so he had to adjust.

(Id. at 257).

Just as the defense fairly questioned Mejia's testimony that the defendant and another person happened to be outside the apartment when she left, the government reasonably argued from the testimony and physical evidence that the defendant had to a plan to kidnap her, considering he was there with a masked accomplice, a cloth, a rope, and a car just outside her door. Thus, the government did not divert the jury's attention to extraneous matters, and the Court instructed the jury that the defendant was not on trial for any act, conduct, or offense not alleged in the indictment. (Id. at 237). Accordingly, the defendant's right to a fair trial was not prejudiced by the suggestion that his plan to enter the apartment to accomplish the kidnapping was interrupted by Mejia's unexpected exit.

Therefore, a new trial is not required in the interest of justice based on the claim of the government making improper closing arguments.

C. Confrontation Clause

Next the defendant asserts that his rights under the Confrontation Clause were denied because of alleged mistranslation of defense counsel's questions during cross-examination of Mejia. (Doc. No. 35: Motion at 9). Two Spanish-speaking persons affiliated with the Federal Defender's Office submitted affidavits that the government's interpreter used the word "mentioned" in place of "described" when defense counsel asked Mejia "whether she provided police with a description of the masked man that grabbed her outside her apartment." (Doc. No. 35-4: Affidavit of Martina Melendez-Ramos ¶ 4; Doc. No. 35-5: Affidavit of Kevin Acuña ¶ 5). However, both persons stated that they were unable to hear a substantial amount of the interpretation in the overflow room where trial proceedings were broadcast. (Doc. No. 35-4 at ¶ 3; Doc. No. 35-5 at ¶ 4).

This issue is without merit because the transcript records the word "described" in defense counsel's questions about the masked man. It reads:

> Q. With the many people who you spoke to about May 21, 2019, you never described the masked man.
> For example, you never said if he is tall or short. You never said --
> THE COURT: Wait, wait. Is there an answer to that question?
> MS. CAUSE: Oh, I apologize.
> THE COURT: So ask a question and then have the witness answer and then you can ask the next question.
> MS. CAUSE: Yes, Your Honor. I'm trying to go slow for the interpreter, probably too slow. Okay.
> THE COURT: So the first question is --
> MS. CAUSE: I can repeat it, Your Honor.
> THE COURT: Okay.
> Q. At no point, with anyone you spoke to, did you describe the masked man.
> A. Yes.

7

> Q. You're saying you described whether he was short or tall.
> A. No, I do not remember having said that.

(Doc. No. 37: Tr. at 109-110).

Additionally, the defendant's failure to raise the concern about translation at the time when it could have been addressed by the Court weighs against finding the trial was unfair. Valladares v. United States, 871 F.2d 1564, 1566 (11th Cir. 1989) ("To allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation would be an open invitation to abuse."). Here, Mejia testified on the first of a two-day trial, and both persons who heard the alleged mistranslation were affiliated with defense counsel's Federal Defender's Office. (Doc. No. 35-4 at ¶ 1; Doc. No. 35-5 at ¶ 1). Yet, this issue was raised for the first time in defendant's post-verdict motion, filed two weeks after Mejia's testimony.

Therefore, a new trial is not required in the interest of justice based on the unfounded claim of a Confrontation Clause violation.

D. Evidentiary Issues

The defendant faults the Court for allowing the admission of: (1) an exterior photograph of Mejia's apartment complex, and (2) evidence regarding the defendant's supposed belief in Santa Muerte (the Saint of Death). (Doc. No. 35: Motion at 10).

First, the defendant argues that the government failed to authenticate the photograph by proving it was an accurate representation of the area at the relevant time. (Id. at 11). The district court's role "is to serve as gatekeeper in assessing

8

whether the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic," which is not a high burden under Federal Rule of Evidence 901. United States v. Davis, 918 F.3d 397, 402 (4th Cir. 2019) (internal quotation marks and citations omitted).

Here, there is no dispute that the photograph (Government Trial Exhibit 3C) depicted the exterior of Mejia's apartment, only that landscaping near her door had changed in the time between the kidnapping and the taking of the picture. (Doc. No. 37: Tr. at 78-80). The defendant cross-examined Mejia on the difference, (Id. at 111), which goes to the evidentiary weight of the photograph, not its admissibility. The defendant has not shown how the change in shrubbery, behind which the accomplice allegedly hid, seriously undermined the fairness of his trial.

Second, the defendant argues that the Court erred in allowing the government to present evidence of his religious beliefs, which are not admissible to suggest a character trait and were not relevant to the kidnapping. (Doc. No. 35: Motion at 12). The defendant's reliance on Federal Rule of Evidence 610 is misplaced because the defendant did not testify during the trial; therefore, his credibility was not at issue. The Court allowed the government to present limited evidence relating to Santa Muerte for a permissible purpose, that is, the defendant's motive for the kidnapping, and its probative value was not substantially outweighed by the danger of unfair prejudice under Rule 403.

Mejia testified that, as the defendant was driving her to a place she didn't know, "he kept saying, 'Bitch, if you're not going to be mine, you're not going to be

with anybody because I made a pact with the devil,'" that is, "'Santa Muerte.'" (Doc. No. 37: Tr. at 88). A person who met the defendant in jail testified that the defendant showed him a tattoo of Santa Muerte on his leg. (Doc. No. 38: Tr. at 226). In the car used in the kidnapping, police found a cellphone containing pictures timestamped two days before showing an example of a "San La Muerte" tattoo on a cellphone screen, a similar tattoo being applied to a leg, the completed tattoo, and the defendant himself. (Government Trial Exhibits 17A, 17B, 17F, 17J). Thus, Mejia's testimony that the defendant's expressed motive in committing the kidnapping was a pact he made with Santa Muerte was corroborated by the witness who saw a tattoo of Santa Muerte on the defendant's leg and by photographs apparently showing the defendant receiving that tattoo shortly before the crime. The photographs also corroborate Mejia's testimony that the defendant used the car in which the cellphone was found to accomplish the kidnapping. Accordingly, the evidence was admitted for proper purposes, and the defendant did not suffer unfair prejudice.

Therefore, a new trial would not be in the interest of justice based on the admission of the photograph of Mejia's apartment and limited evidence relating to Santa Muerte.

E. Jury Instructions

The defendant also faults the Court for instructing the jury on attempted kidnapping, claiming that offense was not alleged in the indictment. (Doc. No. 35: Motion at 13). The fundamental flaw in the defendant's constructive amendment

claim is that the verdict form clearly shows that he was convicted of kidnapping and that the jury did not reach the lesser included attempt offense. (Doc. No. 31: Verdict). Thus, he was not "actually convicted of an offense other than that charged in the indictment," United States v. Whitfield, 695 f3d 288, 309 (4th Cir. 2012) (defining impermissible constructive amendment), and the defendant has shown no prejudice from the jury being instructed on an offense for which he was not convicted.

Additionally, the defendant's premise is incorrect because the indictment did include the offense of attempted kidnapping by alleging:

> On or about May 21, 2019, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,
> LUIS ANALBERTO PINEDA ANCHECTA,
> a/k/a LUIS PENEDA,
> a/k/a LUIS ANALBERTO
> unlawfully and willfully did **and attempted to** seize, confine, kidnap, abduct, carry away and hold F.M. for ransom, reward or otherwise for his own benefit and use, and he used and caused to be used a means, facility and instrumentality of interstate commerce, namely, an automobile and an interstate highway, in committing and in furtherance of the commission of this offense.
> All in violation of Title 18, United States Code, Section 1201(a)(1).

(Doc. No. 10: Indictment at 1) (emphasis added). It is not fatal that the indictment does not include the statutory reference to attempted kidnapping, 18 U.S.C. § 1201(d). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense

11

intended to be punished.' " United States v. Perry, 757 F.3d 166, 171 (4th Cir. 2014) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974) (quoting United States v. Carll, 105 U.S. 611, 612 (1882)). Accordingly, this issue is without merit.

Therefore, a new trial would not be in the interest of justice based on the Court's jury instructions.

F.    Cumulative Effect

The defendant finally argues that the cumulative impact of two or more of the alleged errors merits a new trial. (Doc. No. 35: Motion at 14). Because the Court has found that none of the alleged errors have merit, this claim fails.

III.    CONCLUSION

Having fully considered the defendant's Motion for New Trial under Rule 33 of the Federal Rules of Criminal Procedure, the Court finds that a new trial is not in the interest of justice.

**IT IS, THEREFORE, ORDERED** that the defendant's Motion, (Doc. No. 35), is **DENIED**.

Signed: December 7, 2020

Robert J. Conrad, Jr.
United States District Judge